UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 21-cv-563 -CEM-EJK

PHL VARIABLE INSURANCE COMPANY,

                Plaintiff,

v.

MARK PUIG and LOIS COLLINS,

                Defendants.

_____/

## PLAINTIFF/COUNTER-DEFENDANT'S PHL VARIABLE INSURANCE COMPANY'S MOTION TO DISMISS DEFENDANT/COUNTER-PLAINTIFF LOIS COLLINS' COUNTERCLAIM AND MOTION TO STRIKE AND INCORPORATED MEMORANDUM OF LAW

Plaintiff/Counter-Defendant, PHL Variable Insurance Company ("PHL"), pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 3.01, moves this Court for an order dismissing Defendant Collins' Counterclaim and Affirmative Defense against PHL and states as follows:

## I.     INTRODUCTION

This action involves a claim for benefits under life insurance policy number 40025168 (the "Policy") issued by PHL to Robert Collins (the "Decedent") who died on October 8, 2020. His mother, Plaintiff/Counter-Defendant Lois Collins ("Ms. Collins") contends that she is the sole beneficiary under the Policy because fraudulent change of beneficiary forms were submitted to PHL and its alleged agents designating Defendant Mark Puig ("Mr. Puig") a 70% beneficiary and Ms. Collins a 30%

beneficiary under the Policy. PHL filed the underlying Complaint for Interpleader against Ms. Collins and Mr. Puig in light of their competing claims for entitlement to the same benefits because PHL was not able to determine to whom it should pay the benefits under the Policy.

In response to the Complaint for Interpleader, Ms. Collins has filed a two Count Counterclaim against PHL for declaratory judgment pursuant to Chapter 86 of the Florida Statutes (Count I) and negligence (Count II). Ms. Collins' Counterclaim fails as a matter of law for several reasons.

The gravamen of the Counterclaim is that PHL and its alleged agents should have known that the beneficiary change forms were fraudulently submitted, and, thus, Ms. Collins should be the sole 100% beneficiary under the Policy. PHL's Interpleader action, however, operates as a shield to the Counterclaim because PHL is blameless under Florida law for the dispute between Mr. Puig and Ms. Collins.

Furthermore, Florida law does not impose a duty on PHL to investigate whether the beneficiary change forms were forged, nor did the Policy or forms themselves require a disinterested witness signature in this case or additional oversight on PHL's part as Ms. Collins erroneously asserts. Likewise, no such duty arises through the purported agents of PHL who were neither PHL's captive agents nor its statutory or apparent agents.

Additionally, Ms. Collins' claim for declaratory relief against PHL is duplicative of the Interpleader action and must be dismissed, and Ms. Collins lacks standing to bring a negligence claim against PHL, which owed her no duty of care,

nor a legal basis to assert the affirmative defense of negligence which should be stricken. This Court should dismiss the Counterclaim in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.     RELEVANT FACTUAL BACKGROUND

On or about August 18, 2003, PHL issued the Policy with the face amount of $1,000,000 which was later reduced to $500,000 ("Death Benefit"). (D.E. No. 18, ¶¶ 7-8).[1] When the Decedent obtained the Policy, he named Ms. Collins and his then business partner, Paul Scarborough, as the primary beneficiaries who would each be entitled to half of the Death Benefit. (*Id.*, ¶ 6; D.E. No. 18-1). When Mr. Scarborough died on or about September 21, 2018, Ms. Collins became the sole primary beneficiary under the Policy (D.E. No. 18, ¶ 9).

On August 29, 2020, the Decedent sent Jeimmy Cata, an agent affiliated with the Bruce Baltich Insurance Agency, a beneficiary change form and copied both himself and Mr. Puig on the transmittal e-mail. (D.E. No. 18-3, at 2). The Decedent

---

[1] The "incorporation by reference" doctrine allows courts to consider an extrinsic document referenced in a complaint at the motion-to-dismiss stage without converting the motion into a motion for summary judgment if it is (1) central to the plaintiff's claim; and (2) undisputed—meaning that the authenticity of the document is not challenged. *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002). *See also Cucinotta v. CVS Pharmacy, Inc.*, No. 8:12–cv–1194–T–33AEP, 2012 WL 4009682, at *2 (M.D. Fla. Sept. 12, 2012) (finding that the incorporation by reference doctrine enabled the court to consult documents attached to the motion to dismiss to determine that a valid and enforceable contract between the plaintiff and defendant did not exist). Although the Policy is not attached to the Counterclaim, Ms. Collins incorporates it by reference in the pleading and relying on the Policy and its alleged requirements. *See* (Doc. 18). The Policy incontrovertibly is central to Ms. Collins' claim. *See id.* The Declaration of Nicholle Smith is attached as **Exhibit 1** to this Motion and authenticates a true and correct copy of PHL's policy form T612 FL, upon which the Policy PHL issued to the Decedent was issued, and which is attached thereto as **Exhibit 1-A**. Thus, the Court can consider the language of the Policy when ruling on this Motion without converting it into a motion for summary judgment.

requested that the primary beneficiaries be changed to his spouse, Mr. Puig, as the 70% beneficiary and his mother Ms. Collins as the 30% beneficiary under the Policy. (D.E. No. 18-3, at 5). Ms. Collins, however, contends that this change was requested by Mr. Puig who was impersonating the Decedent, although the e-mail was signed and sent by "Robert Collins" who noted that he had spoken to Mr. Cata and Mr. Baltich the day before, and the form was signed "Robert Collins." (D.E. No. 18, ¶ 12; D.E. No. 18-3, at 2-3).

Ms. Collins further asserts that, pursuant to Mr. Caita's e-mail of August 28, 2020, the beneficiary change form should have included the signature of a disinterested witness attesting to the Decedent's signature and date on the form. (D.E. No. 18, ¶ 12; Doc. 18-3, at 2). However, the beneficiary change form clearly indicated on its face that **the signature of a disinterested witness was required only if the policy owner resided in Massachusetts**, which the Decedent did not, nor does Ms. Collins allege that he did. (D.E. No. 18-3, at 3; D.E. No. 18-6, at 7).

Subsequently, on September 25, 2020, the Decedent re-submitted the beneficiary change form designating Mr. Puig the 70% beneficiary and Ms. Collins the 30% beneficiary. (D.E. No. 18, ¶ 16). This second form was signed "Robert B. Collins" and dated February 21, 2020. (D.E. No. 18-5, at 5). It also states that if the policy owner "reside[s] in Massachusetts, a signature of a Disinterested Witness **MUST** be obtained." (*Id.*) (emphasis in original). Ms. Collins asserts that this second form was also forged, failed to have the required disinterested witness signature, and was fraudulently backdated to February 21, 2020. (D.E. No. 18, ¶ 16).

4

Ms. Collins attached the Report of Forensic Document Examiner Thomas Vastrick to the Counterclaim ostensibly to support that the Decedent's signatures on the two beneficiary change forms was forged. (*Id.*, ¶¶ 14-16). Mr. Vastrick offered the conclusion that to the level of "probable," the allegedly "questioned" signature entries on the beneficiary change forms were "from different entries" than the other handwritten specimens that were submitted to him and were allegedly signed by the Decedent. (D.E. No. 18-4).

The Policy, however, does not require PHL to verify that a signature on a beneficiary change form is authentic, nor does it require a disinterested witness to verify the authenticity of the signature or date on the form. Rather, the Policy grants the owner the exclusive authority to "**exercise all rights provided under this policy without the consent of anyone else,**" including to "**[c]hange the beneficiary of the death benefit.**" *See* (Exhibit 1-A, at 7) (emphasis added). The Policy expressly states that "[u]nless [the owner] provide[s] otherwise, any death benefit that becomes payable under this policy will be paid in equal shares to the Beneficiaries living at the death of the insured." *See* (*id.*, at 9). The Policy permits the owner to "**change the Beneficiary by Written Request. When We receive it, the change will relate back and take effect as of the date it was signed by You.** However, the change will be subject to any payments made or actions taken by Us before We received the notice at Our life operations division." *See* (*id.*, at 10) (emphasis added).

Following the Decedent's death on October 8, 2020, Ms. Collins and Mr. Puig submitted claims for the Death Benefit. (D.E. Nos. 18-6 and Doc. 18-7). In light of their competing claims, PHL commenced the Interpleader action. (D.E. No. 1).

### III.   MEMORANDUM OF LAW

### A. Standard of Review

"A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quotation omitted). To state a plausible claim for relief, plaintiffs must go beyond pleading the "sheer possibility" of unlawful activity by a defendant; plaintiffs must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (quotations omitted). The duty to accept allegations in the Complaint as true does not require PHL or this Court to accept Ms. Collins' legal conclusions. *Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1290 (11th Cir. 2010) (*citing Iqbal*, 556 U.S. at 663). Neither is the Court required to accept "factual claims that are internally inconsistent; facts which run counter to facts of which the court can take judicial notice; conclusory allegations; unwarranted deductions; or mere legal conclusions." *Response Oncology, Inc. v. MetraHealth Ins. Co.*, 978 F. Supp. 1052, 1058

(S.D. Fla. 1997), *order clarified on reconsideration in Response Oncology, Inc. v. Metrahealth Ins. Co.*, No. 96-1772-CIV, 1997 WL 33123678 (S.D. Fla. July 29, 1997)).

### B. PHL Should Be Shielded From Ms. Collins' Counterclaim as a Matter of Law.

An interpleader action "affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." *Hassoun v. Reliastar Life Ins. Co.*, 288 F. Supp. 3d 1334, 1345 (S.D. Fla. Jan. 19, 2018) (quoting 7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1704, at 540 (3d ed. 2001)). *See also Zelaya/Capital Intern. Judgment, LLC v. Zelaya*, 769 F.3d 1296, 1302 (11th Cir. 2014). A valid interpleader action shields a stakeholder from liability to claimants "where the stakeholder bears no blame for the existence of the ownership controversy and **the counterclaims are directly related to the stakeholder's failure to resolve the underlying dispute in favor of one of the claimants**." *Great-West Life & Annuity Ins. Co. v. Dye*, No. 3:11-cv-1070-J-37TEM, 2012 WL 13140714, at *3 (M.D. Fla. June 8, 2012) (quoting *Prudential Insurance Company of America v. Hovis,* 553 F.3d 258, 259 (3rd Cir. 2009)) (bold emphasis added).

Thus, courts have consistently rejected counterclaims that are "essentially based on the interpleader plaintiff's having opted to proceed via an interpleader complaint rather than having chosen from among competing adverse claimants." *Great-West Life & Annuity Ins. Co.*, 2012 WL 13140714, at *3 (quoting *Lutheran Bhd. v. Comyne*, 216 F.

Supp. 2d 859, 862 (E.D. Wis. 2002)) (collecting cases). *See also Harris Corp. v. Dunn*, No. 6:05-cv-1388-Orl-19DAB, 2006 WL 2691541, at *4 (M.D. Fla. Aug. 25, 2006) (and cases cited therein). As such, Ms. Collins' claims will be mooted when the Court ultimately grants PHL's discharge, which the Court has agreed is the proper resolution to the first stage of an interpleader action.  Order Granting Unopposed Motion to Deposit Funds, D.E. 17; *Harris Corp.*, 2006 WL 2691541, at *4 (noting that as a practical matter, counterclaims or other actions against a retirement plan sponsor were not maintainable, in view of the granting of an interpleader motion).

Typically, interpleader actions proceed in two stages. *Ohio Nat. Life Assur. Corp. v. Langkau ex rel. Estate of Langkau*, 353 Fed. Appx. 244, 248 (11th Cir. 2009). During the first stage, the court must determine if the interpleader is proper and whether the stakeholder should be discharged from further liability. *Id.* At the second stage, the Court must evaluate "the respective rights of the claimants to the interpleaded funds." *Id.*  "However, this bifurcation is not mandatory and individual defendants may be dismissed from the action or the entire action may be disposed of at one time." *State Farm Life Ins. Co. v. Peeples*, No. 3:12–cv–889–J–25JBT, 2013 WL 12159342, at *1 (M.D. Fla. June 25, 2013).

Interpleader is proper where there is a single fund at issue, and there are adverse claimants to that fund. 28 U.S.C. § 1335. Discharge is appropriate when the stakeholder "claims no interest in an asset and does not know the asset's rightful owner." *In re Mandalay Shores Co-op. Hous. Ass'n Inc.*, 21 F.3d 380, 383 (11th Cir. 1994). "A successful interpleader suit results in the entry of a discharge judgment on behalf

of the stakeholder; once the stakeholder turns the asset over to the registry of the court, all legal obligations to the asset's claimants are satisfied." *Id.* At this juncture in the proceedings, PHL has deposited the Death Benefit into the Registry of the Court with the Court's permission, (D.E. Nos. 17, 19 and 20). PHL should be dismissed with prejudice from this action, not stuck defending Ms. Collins' baseless claims against it.

### 1. PHL Bears No Blame for the Ownership Controversy.

Ms. Collins seeks to impose liability against PHL for accepting allegedly fraudulent beneficiary change forms. Ms. Collins' allegations of wrongdoing by PHL and its alleged agents, however, are not actionable as a matter of law.

Section 627.423 of the Florida Statutes provides:

> **Whenever the proceeds of or payments under a life or health insurance policy or annuity contract become payable in accordance with the terms of such policy or contract**, or the exercise of any right or privilege thereunder, **and the insurer makes payment thereof in accordance with the terms of the policy** or contract or in accordance with any written assignment thereof, **the person then designated in the policy** or contract or by such assignment **as being entitled thereto shall be entitled to receive such proceeds or payments and to give full acquittance therefor; and such payments shall fully discharge the insurer from all claims under the policy or contract unless, before payment is made, the insurer has received at its home office written notice by or on behalf of some other person that such other person claims to be entitled to such payment or some interest in the policy or contract.**

Fla. Stat. § 627.423 (emphasis added).

Interpreting section 627.423, Florida's Fourth District Court of Appeal in *Schwartz v. Guardian Life Ins. Co. of America* held that the operation of Florida's facility of payment statute "*presumes* that benefits might have been paid to someone with an inferior claim [and still saw] no logical reason to treat situations in which a change of

beneficiary, or change in the owner of the policy, is obtained by a forgery differently from situations where the change occurs as a result of undue influence or incompetency." 73 So. 3d 798, 808 (Fla. 4th DCA 2011) (emphasis in original). Accordingly, the court in *Schwartz* held that **Florida law "does not impose a duty on the insurer to investigate whether a change of owner or beneficiary has been procured by forgery**." *Id.* (emphasis added). Nevertheless, Ms. Collins urges this Court to impose such a duty on PHL in abrogation of Florida law.

Notably, the facts in this **case are distinguishable from those in** *Jackson Nat'l Life Ins. Co. v. Sun Cost Trust Co., Inc.*, No: 8:18-cv-1401-23AAS, 2019 WL 1787491 (M.D. Fla. Apr. 24, 2019), **where the court noted that the insurer may not be a disinterested stakeholder because it may be** liable to a counter-plaintiff for changing the policy beneficiary from the counter-plaintiff to a living trust and making a $20,000.00 policy disbursement without the counter-plaintiff's knowledge or consent, thus diminishing the value of the policy. *Id.* at *3-4. In *Jackson*, however, the insurer had allegedly been notified that the beneficiary change form designating the claimant counter-plaintiff as the sole beneficiary of the policy was forged but failed to conduct any investigation regarding the forgery allegations, failed to inform the counter-plaintiff about the forgery allegations or competing beneficiary designation, failed to seek a timely judicial determination of the policy beneficiary, and instead distributed the benefits without the counter-plaintiff's knowledge or consent. *Id.* at *2-4. Here, PHL properly sought interpleader relief as a disinterested stakeholder from the prospect of multiple

litigation and liability, rather than distribute the Death Benefit to Ms. Collins based solely on her allegations of forgery. *Id.* at * 3.

Additionally, PHL received no notification of a potential forgery before Ms. Collins herself raised the issue and, thus, had no previous reason to question the authenticity or validity of the beneficiary change forms. *See Fortis Benefits Ins. Co. v. Pinkley*, 926 So. 2d 981, 989 (Ala. 2005) ("[W]here an insurer in good faith pays life-insurance benefits in reliance on a forged change-of-beneficiary request form, **which appears regular in all respects**, the insurer is fully discharged from all claims under the policy or contract.") (emphasis added). When it learned that Ms. Collins was contesting the validity of the change in beneficiary and that Ms. Collins and Mr. Puig had competing claims to the Death Benefit, PHL promptly and appropriately filed an interpleader action against the competing claimants. *Jackson Nat'l Life Ins. Co.*, 2019 WL 1787491, at *3-4.

Ms. Collins cannot impose separate, additional liability on PHL because the beneficiary change forms lacked a disinterested witness signature attesting to the authenticity of the owner's signature and date on the forms. The change of beneficiary forms unambiguously provide that a disinterested witness signature is required to change the beneficiary only **if the policy owner resides in Massachusetts**.  (D.E. No. 18-3, at 3; D.E. No. 18-5, at 5). Regardless of what the alleged agents communicated to the Decedent and/or Mr. Puig, who was allegedly impersonating the Decedent, the Decedent was not required to submit the beneficiary change form to PHL along with

the signature of a disinterested witness because the Decedent was a resident of Florida. (Doc. 18-6, at 7).

Furthermore, the Decedent was bound by the terms of the Policy he agreed to and could not have relied on statements that contradict the express terms of the Policy and the beneficiary change forms. *See Allied Van Lines, Inc. v. Bratton*, 351 So. 2d 344, 347–48 (Fla. 1977) ("It has long been held in Florida that one is bound by his contract. Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding."). The court in *Schwartz* noted that "the statutory language of [Section 627.423] that payment must be 'in accordance with the terms of the policy or contract' requires that a change-of-owner or change-of beneficiary request must be in strict compliance with the terms of the policy." *Schwartz*, 73 So. 3d at 808. Here, the Policy does not require the signature of a disinterested witness confirming that the Policy Owner signed and dated a beneficiary change form. Rather, the Policy grants the Owner the exclusive right "**without the consent of anyone else**" to "[c]hange the beneficiary of the death benefit." (**Exhibit 1-A, at 7**). The Policy further states that the insured "may change the Beneficiary by Written Request" and that when PHL receives the written request, "**the change will relate back and take effect as of the date it was signed**" by the Owner. *See* (*id.*, at 10).

Accordingly, as a matter of law, PHL owed no duty to investigate the Owner's change of beneficiary form, much less detect, the potential forgery of the beneficiary change forms during the Decedent's lifetime.

### a. The Actions or Omissions of PHL's Alleged Agents Cannot Bind PHL.

Ms. Collins asserts in conclusory fashion that a disinterested witness's signature was required to change the beneficiary designation based on a statement made by PHL's alleged agents, Mr. Cata and Mr. Baltich in email to the Decedent. However, neither Mr. Puig, nor the Decedent could have reasonably relied on statements made by these individuals that contradicted the terms of the Policy or PHL's own beneficiary change forms. Under Florida law, while acts of an agent are imputable to the insurer, acts of a broker are imputable to the insured. *Essex Ins. Co. v. Zota*, 958 So. 2d 1036, 1046 (Fla. 2008). An "insurance broker is one who solicits insurance orders from the general public and is not bound by contract to work for or solicit insurance for any particular insurance company." *Amstar Ins. Co. v. Cadet*, 862 So. 2d 736, 739 (Fla. 5th DCA 2003). A broker is free to generally act as a conduit or middleman between the insured and one of many insurers chosen by the broker or the insured to issue the policy. *Id.* As a general rule, an insurance broker acts as the agent of the insured. *Id.* at 7240. An insurance agent, on the other hand, is "contractually obligated to work for and solicit insurance on behalf of a specific insurance company." *Id.* Mr. Cata and

Mr. Baltich were not PHL's captive insurance agents, as they were registered as producers with other insurance companies.[2]

**C. Count I for Declaratory Judgment Should Be Dismissed.**

In a diversity case, such as this one, federal courts apply federal law to procedural matters and the law of the forum state to substantive matters. *See Coccaro v. GEICO Gen. Ins. Co.*, 648 Fed. Appx. 876, 880 (11th Cir. 2016) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Florida's Declaratory Judgment Act, however, provides a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county courts, but it does not confer any substantive rights. *Id.* Therefore, the Court should construe Ms. Collins' claim for declaratory judgment in accordance with the federal Declaratory Judgment Act, 28 U.S.C. § 2201. *See Ministerio Evangelitico Int'l v. United Specialty Ins. Co.*, No. 16-25313-CIV-MORENO, 2017 WL 1363344, at *1(S.D. Fla. Apr. 5, 2017) (applying federal rather than Florida state law in a diversity case to determine whether to dismiss claim for declaratory relief).

---

[2] *See* (**Exhibit 2**, Licensee Detail for Jeimmy Cata, DIV. OF INS. AGENT AND AGENCY SERVS., https://licenseesearch.fldfs.com/Licensee/1520949 (last visited June 14, 2021); **Exhibit 3**, Licensee Detail for Bruce Wesley Baltich, DIV. OF INS. AGENT AND AGENCY SERVS., https://licenseesearch.fldfs.com/Licensee/15673 (last visited June 14, 2021). This Court can take judicial notice of the broker's appointments with multiple producers as this information is contained in public records accessible through the State of Florida's Division of Insurance Agent and Agency Services operated by Florida's Chief Financial Officer without converting the Motion to Dismiss into one for summary judgment. *Spechler v. Tobin*, 591 F. Supp. 2d 1350, 1357 (S.D. Fla. 2008), *aff'd*, 327 Fed. Appx. 870 (11th Cir. 2009). *See also Universal Express, Inc. v. U.S. Securities and Exchange Commission*, 177 Fed. Appx. 52, 53 (11th Cir. 2006).

Under 28 U.S.C. § 2201, federal courts have discretion to decide whether to issue declaratory relief. 28 U.S.C. § 2201(a) ("In an actual controversy within its jurisdiction [...] any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."). "The point of a declaratory judgment is to permit 'actual controversies to be settled before they ripen into violations of law,' not to adjudicate past conduct." *Great Lakes Reinsurance (UK) PLC v. TLU Ltd.*, No. 07-61259, 2008 WL 828122, at *1 (S.D. Fla. Mar. 27, 2008).

"An order on a motion to dismiss a petition for declaratory judgment should not reach the merits of the suit but should only determine the question of whether or not the plaintiff is entitled to a declaration of rights." *Tobon v. Am. Sec. Ins. Co.,* No. 06-61912, 2007 WL 1796250, at *2 (S.D. Fla. June 20, 2007). However, "[a] trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which the plaintiff will be able to secure full, adequate and complete relief." *Fernando Grinberg Trust Success Int'l Props. LLC v. Scottsdale Ins. Co.*, No. 10-20448, 2010 WL 2510662 (S.D. Fla. June 21, 2010) (quoting *McIntosh v. Harbour Club Villas*, 468 So. 2d 1075, 1080-81 (Fla. Dist. Ct. App. 1985)).

The relief Ms. Collins seeks in Count I for declaratory judgment is duplicative of the underlying interpleader action which will determine which claimant is entitled to any portion of the Death Benefit and in what amount. *See National Life Ins. Co. v. Alembik-Eisner*, 582 F. Supp. 2d 1362, 1369-70 (2008) ("While the mere filing of

the interpleader action does not 'immunize' the insurer from state law counterclaims filed by a claimant, if the interpleader action is properly filed, it is possible that the merits of the state law counterclaims could be rejected. That is to say, the question is whether the counterclaims are independent of the reason for the filing of the interpleader action."). *See also McBride v. McMillan*, No. 1:15-CV-0815-AT, 2015 WL 13310486, at *2-3 (N.D. Ga. Nov. 4, 2015) (finding that defendant's proposed counterclaim failed to state a claim for relief and would be subject to dismissal in part because he sought declaratory relief that was duplicative of the principal interpleader action). By requesting a declaration with respect to her alleged entitlement to the Death Benefit, Ms. Collins' claim for declaratory judgment is not independent of the Interpleader action and is directly related to PHL's alleged failure to resolve the underlying dispute in Ms. Collins' favor. *See Great-West Life & Annuity Ins. Co.*, 2012 WL 13140714, at *3 (M.D. Fla. June 8, 2012). Thus, Count I should be dismissed given PHL's proper initiation of it claim for interpleader relief. *See id. See also Harris Corp.*, 2006 WL 2691541, at *4.

### D. Count II for Negligence Should Be Dismissed.

"A negligence claim under Florida law requires (1) a duty; (2) breach of that duty; (3) causation; and (4) harm." *Hickman v. Variable Annuity Life Ins. Co.*, No. 8:19-cv-318-T-30JSS, 2019 WL 5802661, at *2 (M.D. Fla. June 5, 2019) (citing *Florida Dept. of Corrections v. Abril*, 969 So. 2d 201, 205 (Fla. 2007)).

Ms. Collins filed the Counterclaim for negligence in her individual capacity, alleging that she is the "100% sole beneficiary of the Policy." (D.E. No. 18, at 19).

While PHL owed the Decedent certain duties pursuant to their contractual relationship, Ms. Collins has failed to allege nor can she establish that PHL owed her an independent duty of care, and, therefore, her negligence claim also fails as a matter of law. *See Cassel v. John Hancock Life Ins. Co. (U.S.A.)*, No. 19-cv-22231-GAYLES, 2020 WL 639612, at *3 (S.D. Fla. Feb. 11, 2020) ("While Defendant might have owed [the policy owner] a duty—which, as set forth above, Plaintiff has no standing to pursue—Plaintiff fails to allege that Defendant owed her any duty. This is fatal to her claim for negligence."); *Hickman*, 2019 WL 5802661, at *2 (M.D. Fla. Jun. 5, 2019) ("The only alleged relationship between plaintiff and [d]efendants is related to her contention that she is the beneficiary of [the decedent's] financial accounts. This is insufficient to state a negligence claim."); *United States Life Ins. Co. in the City of New York v. Logus Manuf. Corp.*, 845 F. Supp. 2d 1303, 1321 (S.D. Fla. 2012) (quoting *Morein v. N. Am. Co. For Life and Health Ins.*, 271 So. 2d 308, 316 (La. Ct. App. 1972)) ("We are aware of no case where the insurer has been condemned to pay damages to a person who may have been named as beneficiary because the insurer or his agent failed to aggressively pursue the insured to see that the change of beneficiary was effected.").

Ms. Collins lacks standing to pursue her negligence claim against PHL. *See Cassel*, 2020 WL 639612, at *2 (and cases cited therein). Article III constitutional standing requires a plaintiff to "show an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and 'that is likely to be redressed by a favorable judicial decision.'" *Id.* (citing *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017)). "In addition to Article III standing, a plaintiff must have prudential standing. Prudential

standing does not relate to the Court's constitutional power to adjudicate the case." *Cassel*, 2020 WL 639612, at *2 (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)). Rather, it involves "three broad principles: the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Id.* (internal quotations and citations omitted).

Furthermore, federal actions "must be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a). "The purpose of the real party in interest rule is to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper *res judicata* effect." *Elandia Int'l., Inc. v. Koy*, No. 09-20588, 2010 WL 2179770, at *4 (S.D. Fla. Feb. 22, 2010) *report and recommendation adopted by Elandia Int'l, Inc. v. Koy*, No. 09-20599, 2010 WL 2196040 (S.D. Fla. Jun. 1, 2010). "While the real party in interest rule and Article III standing are distinct concepts, 'some courts ... have described Rule 17's real party in interest requirement as essentially a codification of the non-constitutional prudential limitation on standing.'" *Cassel*, 2020 WL 639612, at *2 (citing *Elandia Int'l., Inc.*, 2010 WL 2179770, at 5). To determine whether a plaintiff is the real party in interest, federal courts "look to the law of the state where the federal

district court sits...." *Cassel*, 2020 WL 639612, at *2 (citing *Tennyson v. ASCAP*, 477 F. App'x 608, 611 (11th Cir. 2012)).

Because the Decedent "is deceased, his legal claims, including any claims for negligence, now belong to his estate." *Cassel*, 2020 WL 639612, at *2. *See* also *Cross v. Primerica Life Ins. Co.*, No. 3:13cv309, 2014 WL 12527701, at *2 (N.D. Fla. Feb. 11, 2014). "Under Florida law the only party who has the capacity to sue on behalf of an estate is the duly appointed legal representative of the estate." *Tennyson*, 477 F. App'x at 611 (citing *Brake v. Murphy*, 687 So. 2d 842, 843 (Fla. 3d DCA 1996) and Fla. Stat. Ann. § 733.607(1)). Ms. Collins has not alleged that she is the personal representative of the Decedent's estate, and, therefore, she is not a real party in interest for the purpose of stating a claim of negligence against PHL. *See Tennyson*, 477 F. App'x at 611; *Cassel*, 2020 WL 639612, at *2; *Cross*, 2014 WL 12527701, at *2; *Fisher v. PNC Bank N.A.*, No. 18-22974-CIV, 2019 WL 4697593, at * 2 (S.D. Fla. Sep. 25, 2019) ("Plaintiff, who is not the personal representative of the estate, has no standing to bring claims on behalf of the estate against Defendants."). Therefore, Count II should also be dismissed for failing to state a claim upon which relief can be granted. *See id.*

### E. Ms. Collins' First Affirmative Defense of Negligence Should Be Stricken.

Rule 12(f) of the Federal Rules of Civil Procedure permits a court "to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P.12(f). An affirmative defense is generally

considered insufficient as a matter of law if: (1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law. *See Green v. First American Home Warranty Corp.*, No. 8:18-cv-1043-T-36AEP, 2018 WL 5801408, at * 2 (M.D. Fla. Nov. 6, 2018). As discussed above, Ms. Collins lacks standing to plead that PHL was negligent. PHL owed her no cognizable duty to investigate the alleged forgery or require the signature of a disinterested witness attesting to the authenticity of the Decedent's signature or date on the beneficiary change forms. Therefore, Ms. Collins' first affirmative defense of negligence should be stricken.

### F. The Report of Forensic Document Examiner Thomas Vastrick Should Be Disregarded or Stricken.

Ms. Collins has attached the Report of Forensic Document Examiner Thomas Vastrick as Exhibit D to the Counterclaim. (Doc. 18-4). However, this expert report which offers only conclusory opinions that the beneficiary change forms were to a "probable" level, signed by someone other than the Decedent is improper at this stage of the litigation and should be disregarded or stricken. *See Mazzeo v. Nature's Bounty, Inc.*, No. 14-60580, 2015 WL 1268271, at *3 (S.D. Fla. Mar. 19, 2015) (striking expert report attached as an exhibit to the Complaint and only considering the expert's factual statements that were incorporated in the complaint). *See also Meeks v. Murphy Auto Group, Inc.*, No. 9-1050, 2009 WL 3669638, at *1 (M.D. Fla. Oct. 30, 2009) (striking expert affidavit attached to the plaintiff's complaint because the "inclusion of such expert opinions ... is contradictory to the pleading requirements set forth in Fed. R. Civ. P. 8[....]"). Ms. Collins' pleading of an untested expert testimony she believes

supports that a forgery was perpetrated by the Decedent's own spouse is inappropriate for the court's consideration at this time. *See Meeks*, WL 3669638, at *1.

Furthermore, setting aside that no legal duty can be imposed against PHL for its alleged failure to investigate a potential forgery, it strains credulity that PHL and its supposed agents should have spotted the allegedly "obvious inconsistencies in handwriting and signatures" in the beneficiary change forms. First, if those inconsistencies should have been obvious to laypeople, the report of a handwriting expert should not be required to bolster Ms. Collins' otherwise unsubstantiated assertion that the beneficiary change forms were fraudulently submitted. The report of a handwriting expert would only be necessary and potentially admissible to the extent it would "aid the trier of fact when it concerns matters that exceed the understanding of the average lay person." *See State Farm Mutual Automobile Ins. Co. v. Cushing*, No. 6:14-cv-958-Orl-22DAB, 2015 WL 12835682, at *1 (M.D. Fla. Nov. 2, 2015) (citing *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1110 (11th Cir. 2005). Ms. Collins cannot have her proverbial cake and eat it too here—she cannot argue that the forgery should have been patently obvious to PHL on the one hand, and on the other hand, rely exclusively on a forensic report to support the purported forgery.

## IV.   <u>CONCLUSION</u>

For the reasons stated therein, PHL's Motion to Dismiss Ms. Collins' Counterclaim and Motion to Strike should be granted. Ms. Collins has failed to state

plausible claims for declaratory judgment or negligence against PHL, and therefore, Counts I and II should be dismissed with prejudice. Additionally, Ms. Collins' First Affirmative Defense to PHL's Complaint should be stricken, and the Report of Forensic Document Examiner Thomas Vastrick should be disregarded or stricken by the Court.

Dated:  June 25, 2021                 MCDOWELL HETHERINGTON LLP
                                      Attorneys for Plaintiff PHL
                                      2385 N.W. Executive Center Drive, Suite 400
                                      Boca Raton, FL 33431
                                      (561) 994-4311
                                      (561) 982-8985 fax

                             By:    /s/Wendy L. Furman
                                    WENDY L. FURMAN
                                    Fla. Bar No. 0085146
                                    wendy.furman@mhllp.com
                                    LELIA M. M. SCHLEIER
                                    Fla. Bar No. 107019
                                    lia.schleier@mhllp.com

## CERTIFICATE OF SERVICE

I certify that on June 25, 2021, , I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

                             L. Reed Bloodworth, Esq.
                             Clay A. Deatherage, Esq.
                             BLOODWORTH Law, PLLC
                             801 N. Magnolia Avenue, Ste. 216
                             Orlando, FL 32803
                             cdeatherage@lawerfightsforyou.com
                             Reed@LawyerFightsForYou.com
                             Counsel for Defendant Lois Collins

Scott A. Livingston, Esq.
CPLS, P.A.
201 East Pine Street, Suite 445
Orlando, FL 32825
Hzobel@cplspa.com
SLivingston@cplspa.com
Counsel for Defendant Mark Puig


Wendy L. Furman
Wendy L. Furman